Good morning. May it please the Court, I'm Charles Campbell with the firm of Engel, Murphy & Campbell from York, Nebraska. I represent Michael Robinson, the Sheriff of Washington County, which is located in Blair, Nebraska, a town located about 25 miles northwest of Omaha. Mr. Robinson appeals from the denial of his motion for summary judgment based on qualified immunity. Donald Morgan is a Deputy Sheriff employed in the Sheriff's Office who was promoted to Sergeant last year. Mr. Morgan sued Robinson on a freedom of speech retaliation claim after Robinson terminated Morgan following a primary election in which Morgan unsuccessfully challenged Robinson for the position of County Sheriff. Robinson terminated Morgan because he believed that Morgan made statements during the campaign that were false and that those statements tended to create public mistrust of the office, damaged working relationships, and created morale problems for the people who worked in the office. Morgan admitted that Sheriff Robinson believed those statements that he made to be false based on the information possessed by Robinson, so there was no issue of fact on that matter. Robinson's claim of qualified immunity required that the Court determine whether the law was clearly established at the time of Morgan's termination that would have made it obvious to a reasonable Sheriff with the information possessed by Sheriff Robinson that Morgan's termination violated his First Amendment rights. In the context of this case, this required that the District Court determine whether there was clearly established case law that held that a Sheriff of a small county could not lawfully terminate an employee who had made highly critical statements about his management, his operation of the office, and his relationship with his fellow employees that the Sheriff reasonably believed to be false based on information that the Sheriff possessed at the time of the termination. Does Robinson concede that the comments or the statements are matters of public concern? The subjects of the comments, yes, were matters of public concern, and I don't think that's in dispute. Instead of conducting that type of a qualified immunity analysis, the District Court failed to do that, perform that type of analysis as required by both this Court and numerous recent decisions by the United States Supreme Court. First of all, the Court adopted Mr. Morgan's general phrasing of the qualified immunity inquiry by stating that the right of a Deputy Sheriff to speak out against a Sheriff's policies is clearly established. That's the type of general inquiry that the Supreme Court has repeatedly criticized. The District Court made no attempt to phrase the analysis in light of the particular statements made by Morgan and their assessment by Robinson based on the information that Robinson possessed at the time of the termination. Indeed, the District Court failed to even mention the most disparaging statements that Morgan made that were considered by Robinson in the termination. Those were that the morale of the office was poor, that the employees didn't feel respected, that all of the employees in the office were waiting for the day that Robinson lost to see him walk out of the office. Robinson believed these statements were false based on information he was provided by other employees, by his knowledge of the office, and he reasonably concluded that the statements were divisive, that they cast him as a poor leader who was disliked by all the members of his office, and that they gave the impression to the public that the office had poor morale and that no one wanted to work for him. What you've described as the facts in the light most favorable to Robinson, but is that where we are right now when we're talking about whether or not there's disruption? I mean, the District Court needs to look at it in the light most favorable to the non-moving party. Certainly, and that is why this court in Nord v. Walsh County and the U.S. Supreme Court in Connick, which the court quoted from in Nord, emphasized that it is not necessary that the public official wait until the office becomes disrupted before making that determination, but the officer can assess at the time of the decision whether or not he believes it's reasonably likely that there is going to be disharmony, division, public mistrust that is going to occur in the future. Certainly, at the time that Sheriff Robinson made this decision, he didn't have the benefit of the hindsight of what would happen from that point on. He simply had to make the assessment based on the information he possessed at that time. Now, I'm behind you a little bit. I know it's brief, but isn't Judge Battalion's point that there's a factual dispute about the clearly established? Isn't that what he really says? Morgan has raised a sufficient factual dispute on the second prong, the clearly established prong, right? He does. You're correct, Judge. Okay. So you need to address that. All right. Judge Battalion ruled that qualified immunity should be denied because he said a reasonable fact finder could determine that some of the statements by Morgan were truthful. Well, the analysis is not what a jury might find, as you know, under qualified immunity. The analysis that the court is to conduct is whether or not the law was clearly established at the time of the termination that would have made it apparent to a reasonable official in the position of Sheriff Robinson that his termination of Morgan violated Morgan's First Amendment rights. That's an issue that has to be determined as a matter of law. It's not a jury determination. So the district court simply failed to apply the correct standard of analysis on Robinson's qualified immunity. As Judge Kelly, I think, was saying, don't we assume the facts contrary to you and then see if the law is clearly established? Isn't that what we should do? The facts that are established by the record, yes. But the facts that are established by the record under a qualified immunity analysis requires that the court consider under Anderson v. Creighton the information possessed by Sheriff Robinson at the time of the termination. So giving the district court the benefit of the doubt, Morgan's statement posed little or no threat of disruption and some of them were truthful, right? So we're assuming that on appeal, right? No, that's a legal conclusion. This court conducts a de novo review. Won't we find that some of them, notice how carefully he's got it worded, some of them are truthful and some are disruptive or kind of disruptive? I think what he says is that a reasonable fact finder could be. Yeah, I know, but I'm trying to give the district court the benefit here. Right. Because it is true there can be cases where it's so factually messed up we can't even talk about qualified immunity. It's pathetic to talk about it. We have decisions that say that. That's a rough and ready summary, but it's close. So tell me why this isn't so factual that the district court may be right. All right. Even if the district court may not have expressed it right. Okay. I don't know if I can explain this clearly, but our position that the district court really didn't make any factual determinations. What the court did was it said that a reasonable jury could conclude. Now, that's not a factual determination by the district court that's binding on this court. Instead, what you have in the record is that Morgan has admitted that Robinson believed that the statements made by Morgan were false. And we have in the record evidence showing the basis for Robinson's conclusions that those statements were false. We have no evidence in the record disputing the information that Robinson based his determinations on. In other words, there is no evidence in the record showing that Robinson was wrong in concluding that not all of the members of the office disliked him and wanted him to leave the office. There is no evidence in the record showing his conclusion was wrong, that he felt disrespected by members of the office. There is no evidence in the record showing that he was wrong in concluding that Morgan's statement was false, that the fire departments couldn't communicate with each other when you had specific evidence in the record from each of the fire chiefs in the county directly refuting that statement. There is no evidence in the record showing that Robinson's conclusion that Morgan's statement was untrue, that someone would die because of lack of communication between the agencies. Does that really matter, whether he thought it was true or not? What difference does it make? Isn't the question disruption? What I would ask is what did the appellant put into the record here in the district court of tending to show disruption in the operations of the sheriff's department as a result of the campaign speech of the deputy? What you have in the record there is a Sheriff Robinson statement that he believed that these statements were divisive, that they created morale problems and that they created public mistrust of his office. The same sort of evidence that existed in Nord that this court determined justified the sheriff's termination, even though beyond what we had here in Nord there was evidence that, well actually in Nord the individual was terminated at the time, so there was no subsequent disruption of the office because he was terminated. In Nord, as you know, the court determined that it wasn't necessary to wait for disruption of the office or morale problems to occur. The sheriff was entitled to make that determination at the time based on his assessment. Let me approach it a little bit differently. Other than the sheriff's own statements as to what he believed was going on and what he believed the impact was, did he put anything else in the record of disruption, objective evidence of disruption of the operations of the office? Yes. In the record there is evidence that a number of members of his office came to him before he made the decision to terminate Morgan and told him that Morgan's statements were divisive, that they were creating problems within the office, and they recommended to him that he terminate Mr. Morgan. He did not act until those individuals came to him with those representations and made that recommendation to him. So that was based primarily upon information and statements made to him by other members of the department. And so if there was objective evidence in the record that there was some amount of disruption, then don't we go forward in the analysis and conduct a balancing between the societal interests in the public statements being allowed and disruption? Exactly, yes. And that's the Pickering-Conner test. So you say the district court didn't do that here? It didn't do it, no. In fact, in Nord, the court outlined the four factors under— I'm getting into my rebuttal. With your permission, I would ask for some additional time to address my arguments. Answer Judge Shepard's question. Yes. In Nord, the court outlined the four factors of the balancing test under Pickering-Conner. In fact, the district court failed to even mention the first two factors, and those are that the court look at the nature of the governmental entity involved. In this case, you've got a small law enforcement agency, same sort of agency you had in Nord. The second factor is that you look at the specific relationship between the employee and the employer, the need for harmony, the need for a close working relationship. In Nord, the court extensively discussed the importance of loyalty and obedience that is required in a law enforcement agency. No mention of those factors was made by the district court. The third factor in Nord under Pickering is the nature of the speech, and that requires that you look at whether or not Sheriff Robinson had reasonable grounds to believe that at least one or more of the statements were untrue. As I've discussed, he did have reasonable grounds based on the information he possessed. Thank you for your argument. Thank you. Mr. White. Good morning. May it please the Court, I'm Thomas White. With me is Benjamin White, my associate in this matter. We represent the appellee, Donald Morgan. Your Honor, the opinion written by Judge Battalion is starkly different, as I read it, from what is described by counsel for Washington County. Well, let me begin with the clearly established law. It's not starkly different than what he and I discussed, right? There's just a page about that, right? Well, Your Honor, the clearly established law is under Nord, which the appellant relies on. Nord wasn't decided. But, counsel, who has the burden to show the law was clearly established? Certainly in the initial part, we do. Yeah, and so doesn't Nord say that the law was clearly established against you? No, not at all. Yeah, it does. Well, certainly, Your Honor, I don't have a vote. No, no, I didn't mean it that way. I meant, aren't the facts in Nord the same as this case? Not at all. Okay. Completely different. Okay. First of all, in Nord, the deputy sheriff is an at-will employee. Here in Washington County, the deputy sheriff is controlled by a contract, and the contract was actually negotiated by the sheriff on behalf of his men. That contract specifically protects First Amendment rights, specifically protects the right to participate in politics under the contract. Completely different situation. In Nord, he's at-will. Second, in Nord, the size of the department was quite small. This was a 49-person department. That one was approximately 15. There's a major difference there. Third, the court in Nord found that the deputy sheriff was a representative of the sheriff and a policymaker. In this case, the sheriff is the sole policymaker under state law. The deputy sheriff does not make policy on behalf of the sheriff. Fourth, Nord was fired right away. Here, ironically, these comments were made a year before, Your Honor, and Robinson was fired after the primary in violation of the contracts. His contract said that if he did something wrong, if he said something that was inappropriate, he had every right to be told promptly to have ability to go through a disciplinary hearing and then grieve the hearing if he thought he was wrongly disciplined. That was not complied with at all by Sheriff Robinson. So what I would urge you, Your Honor, is though it has to be clearly established by the law, the United States Supreme Court has been very clear that it must be established by law under the facts and circumstances of the particular case. Nord was dramatically different. The factual circumstances of that sheriff's behavior than this sheriff's behavior in this situation. So if you want to say that it is clearly established a sheriff can fire any deputy, and if that's the proposition that the court says, any deputy can be fired for whatever he said under whatever context, if that's what Nord stands for, then, in fact, there is no First Amendment protections. But here, if there is no other way, the sheriff himself, in the contract he negotiated, clearly stated, yeah, you have a First Amendment right, Mr. Morgan. You have a contractual right to fully participate, and we will protect that. Now, that has to be weighed as to whether this sheriff reasonably believed that this would be a violation of the law. Now, there are other concerns, Your Honor, as we go through this that I would like to address, but I want to address the court's major concerns. I hope I've addressed Nord. Thank you. I appreciate it, sir. The next thing I would urge to you is Sheriff Robinson says he believed these to be violations. Record evidence strongly disputes that. If these were clear violations that were clearly going to cause disruption, you don't wait a year in violation of the contract when it's politically convenient after the primary to discipline a man. That tells you, or at least it should advise you under the standard summary judgment, that this had nothing to do with disruption in the workplace. There was no evidence of any disruption in the workplace during that whole period of time, but there is plenty of evidence it was retaliatory. The sheriff in violation of the contract waits until he can't have a political blowback, and then he fires the guy that stepped forward. Now, one of the things that needs to be weighed in this, and I submit to you that the court did weigh these throughout in the Pickering balance, is what was actually said. First of all, the sheriff claimed that my client, Deputy Morgan, was lying that the radio system wasn't complete, but the facts are absolutely clear. Part of the system was a computer-driven map that directed emergency responses to a rural county to find places in a hurry, and that wasn't completed until after the primary. Further than that, the sheriff's own people agreed that the radio system they had didn't work in the schools and the hospitals. Is the arbitrator's decision part of our record? Yes. Thank you. Yes, it is. And if there's anything that's of public concern right now are active shooters in schools. And Deputy Morgan was absolutely correct. They had SWAT exercises that he testified to, where they couldn't effectively communicate with the officers on the inside to officers on the outside from inside concrete buildings. And more than that, he testified that in the vast majority of the basements in Washington County, where often if you have a domestic violence dispute, people will retreat to, the radios won't communicate out of them. Now, those are clearly desperately important public issues. And the arbitrator found, in fact, that everything Deputy Morgan said was true. That was all disputed in the arbitration, and the arbitrator said, hey, every statement he has been accused of, speaking falsely, he was in fact telling the truth. And how these statements were made. Unlike Nord, he didn't go around telling people off the record, trashing the sheriff. He made statements in debates. He made statements in newspapers, in campaigns. Functionally, Your Honor, what Deputy Morgan raised was not personal attacks on Sheriff Robinson in any way, which Nord was. And what he said was true, which Nord found that there was no really public interest in it because the statements the deputy made in Nord were false. Here, what will happen is a horrible crippling of the political process, where the First Amendment should be at its most vigorous and extensive in protecting the right to free debate. What Deputy Morgan did, by any objective analysis, was he took out major issues of public safety, respectfully raised them in the political process. Now, if a deputy can't do that under this circumstances, the long-term cancerous effects on our public institutions will be absolutely forthcoming. Now, if the contract said you can't run against me, what would you say to that? It didn't, though. No, what would you say to that? For example, if he said you are at will, then we'd be in Nord. Then we'd be at Nord. But it didn't. Now, the contract can't say you can't run on the other party against me, right? Again, I don't know, Your Honor. Well, no, you briefed that line of cases. Well, yes. If it's for a partisan reason, you can't fire him, right? Absolutely. But in Nebraska, that's not how it works. You don't have partisan elections at all, right? Well, we do, and Sheriff is one. Oh, Sheriff is partisan. Okay, sorry. It's a legislature. And judges are not. I understand. Proceed. So what I would submit to you is, Your Honor, the Sheriff, and that's another issue I'll need to get to about the Sheriff being the policymaker, but here the statute specifically provides for collective bargaining among the deputy sheriffs. This sheriff, in representing his people in front of the Commission on Industrial Relations, advocated for the very contract that said he had every right to participate in the election. We'd be in a different situation, I would agree, if it was for a partisan reason. But it wasn't. And this position in Nebraska, we protect that right to participate and to speak freely because we believe that will lead to the healthiest public administration and governmental subdivisions. When you tell someone who works inside of a sheriff's department they can't speak out respectfully about what they perceive real failings, then we have a license for a corrupt government. Well, we've got a balancing test to get to in the middle of your assumption. You're with me. Go ahead. Yes. So what I would submit to you is if we look at the Pickering Balance Test and Connick v. Myers and you go through the analysis, what you will find is this is deep importance of public, that there is no evidence of any disruption at all for a year. The need for harmony in the workplace, the other aspects of closely working, the record's clear. It went a year. Not a complaint. And then when they do, when the arbitrator does order Sheriff Morgan to be returned, the sheriff says he's been excellent. There's been no problem. He's done a very good job. I can't resist returning to where we start. I've heard you distinguish Nord. What do you think is the closest case that the sheriff should have known this was wrong? Well, I think the case that was in effect prior to Nord because, again, it's kind of ironic to be claiming you were guided by a case that hadn't been decided. Yeah, but you know my logic on that, so go ahead. All right. We won't pursue that again. Your Honor, I would say that the most important one is Bearden v. Lemon, 475F3-926, 8th Circuit, 2007. That was what I believed was and I think still is the governing authority, that Nord was a situation very limited to its facts. The key one is, well, two key ones is, one, he didn't tell the truth. You know, there shouldn't be, as the court in Connick has said, I mean, you know, non-public interest and if somebody's not telling the truth, there's not a whole lot of reason for the First Amendment to offer them protection. That's not the case here. So I would say Lemon is the controlling precedent, and more than that, it's what did this into the circumstances, what would a reasonable sheriff know? Well, when you have a sheriff that negotiated the contract and the contract says you have every First Amendment right to participate fully in the political process, it cannot get further from Nord. You cannot factually under contacts be further away. I would like to address the issue before my time is up regarding the county's effort to get qualified immunity on the grounds that the sheriff wasn't a policymaker. First of all, under Nebraska statute, he is a policymaker. Second, he acted like a policymaker. He stated and testified in his deposition. He made the decisions on what the rules were under which Mr. Robinson was to be terminated as disciplined. Now, you need to help me, Counselor. I thought it was only the sheriff that was appealing qualified immunity. No. I didn't think the county's issues were before us, but help me. Well, if I'm wrong, Your Honor, then it's an abundance of caution. I realize the district court addressed that. Washington County is liable. I don't think Washington County is appealed, but you need to tell me. I would argue, Your Honor, they have waived it, but we are stayed moving forward under it. So rather than be in a position where I didn't raise the issue, we have raised it. Go ahead and feel free to make your argument. Under Nebraska law, the sheriff is the policymaker. He did, in fact, make the policy in question in this case, which is what were the terms under which Mr. Robinson could be disciplined. And, Your Honor, I would submit respectfully to the court that if it looks at NORD as being determinative, there is no First Amendment protection for any deputy. If we don't look at it in the context of the facts of NORD and limit it to those facts, then the First Amendment in the Eighth Circuit no longer protects any deputy, and I don't think that is a rational result. I thank you for your courtesy. I'd answer any other questions. Seeing none, thank you for that. Thank you, sir. Mr. Campbell, we'll round you up to a minute. Thank you. All right, I'll try to make some points as quick as I can. First of all, Washington County cannot appeal. An interlocutory appeal can only be done on qualified immunity. The sheriff didn't take any action during the campaign because he didn't want to interfere with Mr. Morgan's campaign, didn't want to retaliate against him for the statements that he made during the campaign. NORD facts, in fact, are remarkably similar to the facts presented here. I discussed that in my brief, go through it extensively. I don't have time to comment on that, but certainly if the court compares the natures of the office, the situations that occurred, both campaigns, both terminations immediately following the campaign, you can see the similarity. Simply not appropriate to cast the right in issue here in absolutes, as counsel has done. Counsel makes the comment that if you follow NORD, then you are denying freedom of speech in the Eighth Circuit. Words to that effect. That's simply not the case. You need to look at the specific statements that were made in this case and evaluate those statements under Pickering-Connick. There is no... Counsel, you've reached the end of your time. All right, thank you. Thank you for the argument. I respectfully request that you find that Sheriff Robinson is entitled to qualified immunity, reverse the judgment of the district court. Thank you. Case 17-1002, Morganson v. Robinson is submitted for decision.